**Filed**
Supreme Court of Guam, Clerk of Court



# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**PHILIPS JAMES SABLAN,**
Defendant-Appellant.

Supreme Court Case No. CRA23-011
Superior Court Case No. CF0248-20

## OPINION

## Cite as: 2026 Guam 7

Appeal from the Superior Court of Guam
Argued and submitted on May 29, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant:
David J. Highsmith, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Route 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
General Crimes Division
134 W. Soledad Ave.
Hagåtña, GU 96910


**E-Received**
7/22/2026 3:20:13 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.[1]

**MARAMAN, J.:**

[1]     Defendant-Appellant Philips James Sablan appeals from the trial court's judgment of conviction on one count of second-degree criminal sexual conduct ("CSC II") involving M.T.G. After his conviction, the trial court granted Sablan's request for a new trial, which the People appealed and which we ultimately reversed in *People v. Sablan*, 2023 Guam 4 ("*Sablan I*"). On remand, the trial court reinstated Sablan's conviction and sentenced him to five years of incarceration. Sablan appealed.

[2]     Sablan argues that the jury heard testimony that violated Guam Rule of Evidence ("GRE") 404(b). After a full review of the record, we conclude that M.T.G.'s testimony fell within the scope of GRE 404(b) and overrule *Sablan I*. The testimony was not admissible under GRE 404(b) because the People did not provide Sablan with GRE 404(b) notice upon request. Because the People failed to meet their burden of showing that the trial court's delayed striking of unfairly prejudicial, inadmissible evidence did not materially affect the verdict, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[3]     A grand jury indicted Sablan on one count of CSC II and one count of indecent exposure. Both charges involved the same underage girl, M.T.G., the niece of Sablan's partner, L.G. The indictment alleged that the conduct occurred between April 1 and April 30, 2020. The CSC II charge was for Sablan "causing [his] hand to touch the primary genital area of M.T.G.," and the indecent exposure charge was for "intentionally expos[ing] his genitals to M.T.G. . . . , under

---

[1] The signatures in this opinion reflect the titles of the Justices at the time this matter was argued and submitted.

circumstances in which his conduct was likely to be observed by any person who would be offended or alarmed." Record on Appeal ("RA"), tab 72 at 1–2 (Am. Indictment, Apr. 5, 2021).

[4]      When M.T.G. and her family reported the incident, she told Guam Police Officer Jessilyn Balajadia that Sablan "had touched her primary genital area over her clothing" and "show[ed] her his penis and was shaking it in front of her in an up and down manner." RA, tab 1 at 2 (Magis. Compl., May 8, 2020); *see* Tr. at 35, 39 (Day 1 Jury Trial, Mar. 30, 2021). Officer Balajadia testified that M.T.G. told her Sablan had been wearing a blue towel and that she had been watching SpongeBob SquarePants. Tr. at 39 (Day 1 Jury Trial).

[5]      Nine months before trial, Sablan requested notice of the People's intent to introduce prior-act evidence under Rule 404(b). RA, tab 8 at 1 (Formal Req. 404(b) Evid., June 24, 2020). Sablan noted that Rule 404(b) "requires not merely a statement of intent to use such evidence, but a general nature as to the kind of evidence that would be offered, such that the Defendant could ascertain whether the evidence is of the kind that is offered for a purpose other than propensity." *Id.* The People did not respond to this request.

[6]      Four months before trial and after Sablan's request for notice under Rule 404(b), the prosecution conducted a pretrial interview with M.T.G. at the Attorney General's office, which Investigator Frank R. Santos documented in what the parties have called "the Santos report." Appellant's Excerpts of Record ("ER") at 9 (OAG Rep. of Investigation & Notes of Investigator Frank R. Santos, Nov. 12, 2020); RA, tab 41 at 2 (Def.'s Ex. List Submission, Dec. 18, 2020) (listing Santos report).[2] According to the Santos report, M.T.G. revealed the following regarding the indicted incident:

> M.T. stated that on the day of the incident while she was in her Auntie [L.G.]'s bedroom, her Uncle Phil (Defendant) came out of the shower naked. M.T. indicated that the defendant came up to the bed holding his private with his left

---

[2] Although this report was listed as a defense trial exhibit, it was never admitted into evidence.

hand and playing with himself (M.T. demonstrated clenching her left hand like a "Fist" and motioning her hand) and with his right hand was touching her private over her clothing. M.T. stated that he/she then pushed the defendant away from him/her and left the room to get a drink of water. M.T. stated that when he/she was walking out of the room, his/her Auntie [L.G.] entered the bedroom. M.T. stated that after getting a drink of water, he/she returned to the bedroom and noted that his/her Auntie [L.G.] was not in the room anymore. M.T. stated that at that time the defendant asked M.T. if he/she would like to watch videos. M.T. stated that he/she believes that the above incident happened when he/she was in the 2nd grade because at that time his/her teacher was Mr. Quinata. M.T. also indicated that the incident did not happen around his/her birthday or during Christmas time.

ER at 9 (OAG Rep. of Investigation & Notes of Investigator Frank R. Santos) (emphasis omitted).

In addition to discussing the indicted conduct, M.T.G. disclosed conduct that had not been previously revealed, allegedly occurring before the indicted offenses:

M.T. stated that the above incident was not the first time that the defendant had ever touched him/her in his/her private. M.T. stated that other incidents happened when he/she was four (4) [years of age] and continued up to when he/she was eight (8) [years of age]. M.T. stated that he/she could not give any times and dates of when these incidents happened because he/she was unsure. M.T. did explain that one time when she and his/her Auntie [L.G.] were sleeping on the "Air mattress" on the floor and the defendant was sleeping on the bed, he/she felt someone's hands touching him/her on her private under her clothes. M.T. stated that whenever the incidents were happening to him/her no one was around, only his/her Auntie [L.G.] who was either sleeping in the bedroom with him/her or Auntie [L.G.] was outside the bedroom.

*Id.* The Santos report became the focal point of multiple challenges to M.T.G.'s testimony.

## A. The People Anticipated Rule 404(b) Evidence at Trial

[7]     The People's opening statement reflects that they expected M.T.G. to testify to multiple incidents: "And it's also expected that she'll testify . . . this is not the only incident. Okay. There are other incidents." Tr. at 23–24 (Day 1 Jury Trial). The prosecutor emphasized that Sablan "has been touching her." *Id.* at 22.

[8]     On direct examination, the prosecutor refreshed L.G.'s recollection with her statement to police that she initially told police that M.T.G. told her that Sablan "touches" her as opposed to

"touched." Tr. at 70–72 (Day 1 Jury Trial) ("Q: When [M.T.G.] first told you what happened did she say the word he touched me or he touches me?").

**B. The Prosecutor Intended to Elicit Prior Act Evidence from M.T.G.**

[9]　　M.T.G. identified Sablan in the courtroom. Tr. at 47 (Day 2 Jury Trial, Mar. 31, 2021). She testified that while she was watching SpongeBob SquarePants on the television in L.G. and Sablan's bedroom, Sablan "came out of the restroom" and "dropped his towel and then started playing with his private." *Id.* at 50–52. She testified that his towel was blue or green. *Id.* at 53. M.T.G. explained that Sablan was facing her during this incident, but she did not know whether he knew she was there. *Id.* at 53–54. She "just looked away and then ran outside to [her] mom." *Id.* at 54.

[10]　　The prosecutor later asked, "Was the time with the towel the only incident with Phil?" *Id.* at 58. Defense counsel did not object to this question, and M.T.G. had yet to testify to any sexual contact comprising the indicted conduct for CSC II. *See id.* She testified that after Sablan showed her on his phone "the bad things that he want[ed] to do," she ran outside and sat with her mom again. *Id.*

[11]　　M.T.G. then testified that Sablan asked her for her underwear, and when she said no, it went missing. *Id.* at 59, 61. She said she later found it in Sablan's bag. *Id.* at 61.

[12]　　She testified that Sablan touched her "[i]n [her] private," not on the top of her body or backside, and she pointed to the top of her thighs. *Id.* at 61–62. The prosecutor then asked M.T.G., "How many times did he touch you there?" *Id.* at 62. M.T.G. began to respond, "When I was sleeping with my Auntie [L.G.] and then I felt something on my --" *Id.* Sablan then objected, cutting the testimony short. *Id.* Sablan argued that M.T.G. was about to testify about prior unindicted conduct that should have been disclosed under GRE 404(b). *Id.* at 63. Sablan argued that, based on the Santos report, M.T.G. would testify about a prior bad act. *Id.* at 62–67.

[13]    The prosecutor argued, "This is not anywhere near 404(b) territory at all" while describing

prior-act evidence:

> [L.G.] just testified.  [L.G.] testified that this girl came to her and said he's touching
> me as touches, not touched, touches --"

Tr. at 65, 71–72 (Day 2 Jury Trial).  And then later:

> [T]he evidence that we already head [sic] from [L.G.] was that *she told it was*
> *touches with an S, multiple touches when [sic] is why I asked the question that way*.
> So the evidence the jury heard has already indicated this . . . .

*Id.* at 71 (emphasis added).  The prosecutor said his next question would be "was this the only time

this happened?"  *Id.* at 63.

### 1.   The trial court sustained Sablan's Rule 404(b) objection

[14]    After hearing extensive arguments by both parties and deliberating overnight, the trial court

sustained Sablan's GRE 404(b) objection.  Tr. at 7 (Day 3 Jury Trial, Apr. 1, 2021).  The trial court

considered the narrative in the Santos report and determined that M.T.G.'s potential testimony fell

within the scope of GRE 404(b):

> In this case the People had admitted that they do not know when this happened and
> they do not know what the . . . alleged victim is going to say.  Based on the People's
> representations about the alleged victim's potential testimony . . . , the Court finds
> that the alleged victim's potential description of multiple incidents of sexual contact
> by the Defendant would constitute other acts as described in Rule 404(b).

*Id.*  The trial court then determined that M.T.G.'s potential testimony would be inadmissible under

GRE 404(b), finding that "the People's question asking how many times did he touch you does

give rise to improper 404(b) [evidence] of other acts not charged in the indictment."  *Id.*  The trial

court emphasized that the People had not given proper notice under GRE 404(b) and found that

"the People also did not pr[of]fer an admissible purpose of this evidence under Rule 404(b)."  *Id.*

at 8.  The People did not argue that the testimony was admissible under GRE 413.  The court

conducted a Rule 403 analysis, agreeing with Sablan that "the probative value of [M.T.G.'s

testimony] is substantially outweighed by the danger of unfair prejudice to the Defendant." *Id.* The court concluded that "because the indictment charged one incident of sexual contact, the Court will not allow the People to ask how many times the Defendant touched the alleged victim." *Id.* The trial court later clarified its ruling, stating that "the People are not allowed to bring up anything other than an incident that they're referring to in the indictment. Now what incident that is I don't think that's been established at least so far, at least from the testimony." *Id.* at 28.

### 2. M.T.G.'s testimony resumed

[15] On direct examination, the prosecutor asked, "So the towel thing happened first and then the touching?" *Id.* at 44. Before the trial court had an opportunity to rule on defense counsel's objection to the question as leading, M.T.G. responded, "Yes." *Id.* She then testified that after she fell asleep, she "felt something touching [her] lap," and stated that it was Sablan's hand. *Id.* at 46–47.

[16] On cross-examination, M.T.G. testified that she thought the touching incident she had described occurred when she was about four years old:

> Q       Okay. The time you talked about when Uncle Phil touched you, how old were you when that happened?
>
> A       I forgot.
>
> Q       Okay. Were you like four years old?
>
> A       I think so.

*Id.* at 51. On redirect examination, however, M.T.G. clarified that she thought the same incident had happened when she had a specific teacher, who was the same teacher she had in second grade:

> Q       . . . . So [defense counsel] asked you a question about whether or not this happened when you were four years old.
>
> A       Yes
>
> Q       Okay. What grade are you in now?

A        I'm in third grade.

Q        Third grade.  And when you were in second grade who was your teacher?

A        Mr. Cannato (phonetic).

Q        Cannato?

A        Yes.

Q        Okay.  And do you know if the time that Mr. Sablan touched you on your private who was your teacher?

A        I think still Mr. Cannato.

Q        Okay.  And when you were being touched, was it over your clothes or under your clothes?

A        Over my clothes.

*Id.* at 56–57.

## C.  Sablan Made Several Motions in the Trial Court

[17]    After the People's case-in-chief, Sablan moved to strike parts of M.T.G.'s testimony, arguing that the People did not provide notice of GRE 404(b) evidence and were going into "a prior bad act compared to the allegations in the original complaint" regarding "a completely different incident from the one charged in the indictment." Tr. at 62–63 (Day 3 Jury Trial).  Sablan asked for a curative instruction about M.T.G.'s testimony. *Id.* at 62.  The People agreed  to strike some parts of the testimony, including references to the air-mattress incident and "anything that happened on redirect," but not others. *Id.* at 66.

[18]    Sablan also moved for acquittal on both charges. *Id.* at 67, 74.  The court took the motions to strike and to acquit under advisement. *Id.* at 77–78.  The next day, the court granted Sablan's motion to strike, citing *People v. Taitano*, 2015 Guam 33, and finding an impermissible material variance existed between the evidence—specifically, M.T.G.'s testimony about extrinsic acts—

and the allegations underlying the CSC II charges. RA, tab 87 at 2–3 (Dec. & Order, Aug. 16, 2021) (citing RA, tab 67 at 1:30:04–1:40:41 (Min. Entry, Apr. 2, 2021)). The trial court "held that the material variance constituted unfair surprise which unconstitutionally deprived [Sablan] of his rights and granted [his] Motion to Strike." RA, tab 87 at 2–3 (Dec. & Order).

[19]     When the trial resumed on April 5, the court explained the breadth of its striking, using timestamps from the record. Tr. at 7 (Day 4 Jury Trial, Apr. 5, 2021). The trial court determined "the testimony refers to an incident that occurred on a day different from the indecent exposure incident which is alleged in the indictment." *Id.* at 6. The trial court found the People's direct and redirect on April 1 elicited inadmissible testimony, but the defense's cross-examination did "not clearly refer[] to touching that occurred on a day different from the indecent exposure incident." *Id.* The trial court further ordered that, "in the event the jury requests playback of testimony in this case, the Court will only play back the portions of the record not stricken." *Id.* at 8.

[20]     The trial court "denied [Sablan's] motion for a judgment of acquittal on both charges finding that there was sufficient evidence for a rational trier of fact to conclude that [he] committed both crimes as charged." RA, tab 87 at 3 (Dec. & Order); *see also* Tr. at 12, 17 (Day 4 Jury Trial).

[21]     The jury remained recessed for four days over a weekend from Thursday afternoon until Monday morning—from April 1, 2021, at 3:11 p.m. until April 5, 2021, at 10:28 a.m. Tr. at 61 (Day 3 Jury Trial); RA, tab 67 (Min. Entry, Apr. 2, 2021) (calling in jury on Friday and immediately dismissing it); Tr. at 23 (Day 4 Jury Trial). The trial court proposed a curative instruction that satisfied both parties. Tr. at 8 (Day 4 Jury Trial). When the jury returned, the trial court gave the jury the following curative instruction:

> [B]efore the jury recessed last week [M.T.G.] testified on March 31st and April 1st. The Court now instructs the jury that it is striking certain testimony of [M.T.G.]. Accordingly, the jury must disregard and not consider as evidence any testimony of [M.T.G.] that refers to an alleged incident or incidents of touching that occurred on a day different from the alleged exposure by the Defendant of his genitals as

charged in the indictment.  All right, jurors.  So the Court is giving that instruction at this time.

*Id.* at 23–24.  The trial court also provided a similar jury instruction:

> I have ordered that testimony of [M.T.G.] that refers to an alleged incident, or incidents, of touching that occurred on a day different from the alleged exposure by [Sablan] of his genitals as charged in the Amended Indictment, is stricken from the record.  This is not proper evidence in the case.  You must disregard it entirely.  Do not consider this testimony in reaching your decision.

RA, tab 77 at Instr. 3I (Jury Instrs., Apr. 6, 2021); *accord* Tr. at 72–73 (Day 6 Jury Trial, Apr. 6, 2021).  The jury deliberated for about four hours on April 6, 2021.  The jury returned its verdicts, finding Sablan guilty of the CSC II charge and not guilty of the indecent exposure charge.

[22]    Sablan then moved for a judgment of acquittal and for a new trial, based on insufficiency of the evidence and prosecutorial misconduct.  RA, tab 81 at 3 (Mot. Acquit & Mot. New Trial, Apr. 13, 2021).  Citing *People v. Messier*, 2014 Guam 34 ¶ 21, Sablan explained that "[a] trial court may not grant a new trial based solely on its disagreement with the jury's credibility determinations, unless credibility issues arise to 'exceptional circumstances.'" *Id.* at 5.  He argued, "There are exceptional circumstances here." *Id.*  Sablan's initial motion focused on claims of prosecutorial misconduct.  *Id.* at 6–9.

[23]    The People opposed Sablan's motion to acquit and for a new trial, arguing that "the Victim's testimony combined with the information given to the jury about the potential time frame is more than sufficient."  RA, tab 82 at 2 (Opp'n Mot., Apr. 19, 2021).  The People argued that the misconduct claims were false.  *Id.* at 5–8.

[24]    In reply, Sablan claimed the prosecution "conflated [M.T.G.'s] allegations of the[] different incidents" that were described in the Santos report "into one," which allowed the prosecutor to tell "the jury that it could convict based on the bed incident knowing from [the Santos report] that he was talking about two or three different incidents."  RA, tab 84 at 2–3 (Reply Mem., Apr. 29,

2021) (citing the Santos report). Sablan argued "the prosecutor circumvented the court's ruling about material variance, unfair surprise and double jeopardy," claiming that "the defendant was convicted of an offense that he was not charged with, the allegation that he touched [M.T.G.] while she was asleep several years before April 1–30, 2020." *Id.* at 3. Sablan claimed this amounted to unfair surprise because "[t]he defense did not expect the prosecution to use the incidents described in [the Santos report] as proof of the actual charges related to April 2020," claiming that "[s]uch an attempt would have been opposed vigorously." *Id.*

[25] The trial court denied the motion to acquit, finding sufficient evidence for the CSC II conviction based on M.T.G.'s testimony, but granted a new trial. RA, tab 87 at 1–22 (Dec. & Order). The court concluded that a new trial may be appropriate where "the government's witnesses lacked credibility and the case has been marked by 'uncertainties and discrepancies,'" or where the "government's case depend[ed] upon inferences upon inferences drawn from uncorroborated testimony that . . . [was] subject to questions of credibility." *Id.* at 9–10 (quoting *People v. Leslie*, 2011 Guam 23 ¶¶ 25–26). The court also observed that "the presentation of ultimately impermissible evidence, although subsequently stricken, may be grounds warranting the granting of a new trial." *Id.* at 10; *see also id.* at 10 n.2 (collecting U.S. Supreme Court and Circuit Courts of Appeals cases supporting this position). The court acknowledged that "motions for new trials should be granted sparingly and with caution, doing so only in those really exceptional cases." *Id.* at 9 (citation modified) (quoting *Leslie*, 2011 Guam 23 ¶ 25).

[26] The court explained its earlier finding of a material variance and unfair surprise:

> When the Defendant made his Motion to Strike, the Court compared the evidence proffered to the supporting Declaration to the Magistrate's Complaint, the People's asserted theory of the case, and the discovery documents provided to the Court through the parties' exhibit binders. Based on this comparison, the Court found that the Defendant was reasonably led to conclude that the grand jury had not indicted him on two separate incidents that occurred on two different days or

times. But rather, the Indictment and charges against him referred to a single incident wherein the People alleged that two different crimes were committed.

*Id.* at 11 (citing RA, tab 67 at 1:30:04–1:40:41 p.m. (Min. Entry, Apr. 2, 2021)). The trial court first considered the curative and limiting instructions sufficient "to cure the material variance." *Id.* at 12. But it later found that "the delayed striking of M.T.G.'s testimony in this case present[ed] the exceptional circumstance where the subsequent withdrawal of such testimony could not remove the effect caused by its admission." *Id.* (citing *Throckmorton v. Holt*, 180 U.S. 552, 567–68 (1901); *Holt v. United States*, 94 F.2d 90, 93–94 (10th Cir. 1937)). The court reasoned that:

> [T]he instant case presents an example where the Court seriously doubts whether it was possible for the jury to efface, or erase, the stricken testimony from their [sic] minds based on the fact that: the testimony ordered to be stricken was voluminous and complex, it remained before the jury for several days before withdrawn, the stricken testimony was highly prejudicial as it contained serious allegations against the Defendant, and the competent evidence remaining was far from conclusive.

*Id.* at 13 (citing *Throckmorton*, 180 U.S. at 567–68; *Holt*, 94 F.2d at 93–94). The court stated that "the jury was able to ponder the improper testimony for nearly four days." *Id.* at 14. The trial court concluded that "due to the exceptional circumstances of this case, the withdrawal of the testimony did not cure the effect caused by its admission, thereby warranting the granting of a new trial." *Id.* at 16.

[27] The trial court also concluded that concerns about M.T.G.'s credibility provided another basis for granting a new trial. *Id.* at 16–18. Citing *People v. Quinata*, 1999 Guam 6 ¶ 16, the trial court stated, "In deciding on a motion for a new trial, the Court acts as the 'thirteenth juror' to weigh the evidence and evaluate witnesses' credibility to determine if the evidence 'preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred.'" *Id.* at 9. The trial court reasoned that "the uncertainty surrounding" "which incident M.T.G. was referring to during her testimony . . . supports the granting of a new trial." *Id.* at 17 (citing *Leslie*, 2011 Guam 23 ¶ 25). The trial court concluded that "the interests of justice require that a new trial

be granted" because of "the uncertainties surrounding M.T.G.'s testimony," finding "that the evidence in this case 'preponderates sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred.'" *Id.* at 18 (alteration in original) (citation omitted).

## D. The People Appealed, and We Reversed

[28]    The People appealed the trial court's decision and order granting Sablan a new trial.  In *Sablan I*, 2023 Guam 4, we reversed the trial court's decision and order granting a new trial, concluding it abused its discretion and relied on an incomplete standard by not applying "Guam's test for 'exceptional circumstances' warranting a new trial."  2023 Guam 4 ¶ 33.  We explained: "*Messier* held that Guam's standard would bar a trial court from granting 'a new trial based solely on its disagreement with the jury's credibility determinations, unless credibility issues arise to . . . 'exceptional circumstances' . . . including testimony that is 'patently incredible or defies physical realities.'" *Id.* (quoting *Messier*, 2014 Guam 34 ¶ 21).  We were "persuaded that the jury's traditional and vital role as fact-finder should be protected and trial courts should not serve as 'thirteenth jurors.'" *Id.*

[29]    On remand, the trial court reinstated Sablan's conviction and sentenced him to five years of incarceration.  Sablan timely appealed.

[30]    The People offered to file under seal discovery, which, in their briefing, they claimed: "clarifies that M.T.G.'s reference to the incident regarding her lap was the same incident alleged in the indictment."  Appellee's Br. at 14 (Mar. 6, 2024).  While under consideration, we ordered the People to file relevant discovery under seal, which the People submitted.

## II.  JURISDICTION

[31]    This court has jurisdiction over an appeal from a final judgment of conviction.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-100 (2026)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[32]     "We review questions of law *de novo*." *Messier*, 2014 Guam 34 ¶ 11; *see also People v. Felton*, 928 N.W.2d 307, 312 (Mich. Ct. App. 2018) (reviewing *de novo* whether a rule or statute prohibits the introduction of evidence).  This court "reviews *de novo* whether evidence comes within the scope of GRE 404(b)." *People v. Camaddu*, 2015 Guam 2 ¶ 9.  We review for harmless error the prosecution's failure to provide GRE 404(b) notice upon the defendant's request.  *See United States v. Vega*, 188 F.3d 1150, 1153–54 (9th Cir. 1999); *Mitchell v. State*, 2020 WY 142, ¶ 28, 476 P.3d 224, 235 (Wyo. 2020).[3]  We will reverse unless the People meet their burden of establishing "it is more probable than not that the error did not materially affect the verdict."[4] *People v. Sharpe*, 2024 Guam 12 ¶ 58 (quoting *People v. Jesus*, 2009 Guam 2 ¶ 54).

## IV. ANALYSIS

### A. We Overrule *Sablan I*

[33]     We have clarified that the "[l]aw of the case does not . . . have the inexorable effect of *res judicata* and does not preclude the court from reconsidering an earlier ruling if the court feels that the ruling was probably erroneous and more harm would be done by adhering to the earlier rule . . . ." *People v. Gutierrez*, 2005 Guam 19 ¶ 40 n.7 (per curiam) (second alteration in original) (quoting *Chun v. Bd. of Trs. of Emps.' Ret. Sys.*, 992 P.2d 127, 136 (Haw. 2000)).[5]  Courts

---

[3] "Because the Guam Rules of Evidence is based on the Federal Rules of Evidence, cases from state and federal courts are relevant and persuasive when we confront issues of first impression." *People v. Tuncap*, 2014 Guam 1 ¶ 31 n.1 (citing *People v. Roten*, 2012 Guam 3 ¶ 16 & n.3).

[4] We find reversal necessary under the lower standard of harmless error for non-constitutional errors. *See People v. Pinaula*, 2025 Guam 6 ¶ 10 ("The test for harmless error for constitutional error is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,' and for a non-constitutional error whether 'it is more probable than not that the error did not materially affect the verdict.'" (citations omitted)).  We therefore do not address whether this error was of a "constitutional magnitude." *See id.* ¶ 20 (quoting *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001)).

[5] The People argue that because Sablan did not petition for rehearing, any reconsideration of the issues the court addressed in *Sablan I* is precluded.  Appellee's Br. at 11, 20–22 (Mar. 6, 2024).  In his reply brief, Sablan accurately distinguishes each of the cases the People cite for this proposition.  Appellant's Reply Br. at 16–17 (Apr.

recognize exceptions to the law of the case doctrine where "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)), *aff'd sub nom.*, *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013); *see also People v. Katzuta*, 2016 Guam 25 ¶ 74 (recognizing exceptions for trial courts when applying law of the case); *Johnson v. Cadillac Motor Car Co.*, 261 F. 878, 883–88 (2d Cir. 1919) (collecting cases where appellate courts did not apply law of the case on second appeal when first decision was erroneous); *McGovern v. Kraus*, 227 N.W. 300 (Wis. 1929) (providing history of law of the case doctrine and departing from doctrine by instead reserving right to correct prior holdings in the same case).

[34]    The People argue that the law of the case bars our reconsideration of *Sablan I* based on the exceptions set forth in *People v. Hualde*, 1999 Guam 3. *See* Appellee's Br. at 10 n.2, 15–20. This court previously articulated this standard based on Ninth Circuit case law and separated the factors requiring that the prior decision be clearly erroneous from those requiring that manifest injustice would otherwise result:

> A court has discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result.

*Hualde*, 1999 Guam 3 ¶ 13 (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)). The Ninth Circuit has since clarified that when sitting *en banc*, it "has consistently identified only three exceptions, and has treated the 'manifest injustice' and 'clearly erroneous' inquiries as two

---

2, 2024). Petitions for rehearing are not required for this court to exercise its discretion to reconsider its prior decision. In other words, *Sablan I* became the law of the case when no petition for rehearing was filed. But the narrow exceptions for reconsidering an earlier ruling still apply.

parts of the same exception." *United States v. Gartenlaub*, No. 22-55799, 2024 WL 4987258, at *1 n.2 (9th Cir. Dec. 5, 2024) (quoting *United States v. Jingles*, 702 F.3d 494, 503 n.3 (9th Cir. 2012)). A member of this court has previously recognized this distinction. *People v. Orallo*, 2006 Guam 8 ¶ 11 n.1 (Torres, J., concurring) ("In *Hualde*, this court provided that a clearly erroneous interpretation of law and manifest injustice are two separate grounds on which a court could depart from the law of the case. However, federal courts have combined the two grounds and held that a court may depart from the law of the case where 'the previous disposition was clearly erroneous and would work a manifest injustice.'" (quoting *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995))). Regardless of how the factors are listed, we are convinced that *Sablan I* was clearly erroneous and would work a manifest injustice.

[35]    We reserved judgment on whether M.T.G.'s statements were 404(b) evidence and held that "*if* the testimony was GRE 404(b) evidence, it could have been admissible." *See Sablan I*, 2023 Guam 4 ¶ 65. The issue of whether M.T.G.'s statements are 404(b) evidence is now squarely before us. After a thorough review of the record,[6] including the prosecutor's arguments and statements, we conclude that M.T.G.'s testimony fell within the scope of GRE 404(b). We additionally conclude the testimony was inadmissible because the People did not give Sablan notice. This conclusion renders our prior analysis of the 404(b) evidence in *Sablan I* erroneous, and adhering to that decision would do more harm than correcting our mistake. *See, e.g.*, *Ammons v. State*, 880 S.E.2d 544, 558 (Ga. 2022) (Pinson, J., concurring) ("[T]he rule of law can also be undermined by perpetuating decisions that are obviously and harmfully wrong. When sticking to

---

[6] On this appeal, we are reviewing for harmless error the prosecution's failure to provide GRE 404(b) notice upon the defendant's request. *See United States v. Vega*, 188 F.3d 1150, 1153–54 (9th Cir. 1999); *Mitchell v. State*, 2020 WY 142, ¶ 29, 476 P.3d 224, 235 (Wyo. 2020). "'Harmless error determinations are highly fact-specific,' and 'often involve a review of the entire trial record.'" *People v. Pugh*, 2018 Guam 14 ¶ 26 n.4 (quoting *Inthavong v. Lamarque*, 420 F.3d 1055, 1060 (9th Cir. 2005)).

such decisions would cause more damage to the rule of law than correcting course, courts may choose overruling as the lesser evil."). We overrule *Sablan I*.

## B. History and Purpose of GRE 404(b) Notice

[36]    GRE 404(b) permits the admission of evidence that may otherwise raise a propensity inference when it is offered for a non-propensity purpose, subject to the balancing requirements of GRE 403. Guam R. Evid. 404(b)[7]; *see People v. Pinaula*, 2025 Guam 6 ¶ 14 n.2 ("Generally, [e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. The circumstantial use of character evidence is generally discouraged because it carries serious risk of prejudice, confusion and delay. It is black-letter law that the government cannot introduce evidence of a defendant's prior bad acts to show [his] propensity to commit the charged crime." (alterations in original) (citation modified)); *Pinaula*, 2025 Guam 6 ¶ 12 ("[A]ll 'relevant' evidence is subject to balancing under GRE 403 . . . ."). GRE 404(b) regulates the presentation of evidence involving uncharged conduct—defined as "extrinsic acts"—to prove character. GRE 404(b) is modeled on Federal Rule of Evidence ("FRE") 404(b) and was initially adopted by the Guam Legislature in 1980 on the advice of the Judicial Council of Guam. *See* Guam Pub. L. 15-115:8 (Mar. 25, 1980). Because GRE 404(b) is substantively the same as FRE 404(b), the commentary regarding FRE 404(b) and decisions of courts in other jurisdictions that have adopted the provision are persuasive and help

---

[7] Guam Rule of Evidence 404(b) reads in its entirety:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Guam R. Evid. 404(b).

guide our understanding of Guam's parallel Rule 404(b).  *See People v. Chinel*, 2013 Guam 24 ¶ 22 ("[W]e look to the federal courts' interpretations of analogous Federal Rules of Evidence when we lack case law.").

[37]    Out of concern that FRE 404(b) evidence was overwhelmingly introduced by the prosecution in criminal cases, and that defendants were often surprised by such evidence at trial, the rule was amended in 1991 to add the language "provided that upon request by the accused, the prosecution in a criminal case *shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown*, of the general nature of any such evidence it intends to introduce at trial."  Fed. R. Evid. 404(b) 1991 amendment (emphasis added); FRE 404(b) advisory committee's note to 1991 amendments ("Rule 404(b) has emerged as one of the most cited Rules in the Rules of Evidence.  And in many criminal cases evidence of an accused's extrinsic acts is viewed as an important asset in the prosecution's case against an accused. . . . [T]he overwhelming number of cases involve introduction of that evidence by the prosecution.").  According to the commentary accompanying the 1991 amendment to Rule 404(b) providing for notice:

> The amendment requires the prosecution to provide notice, *regardless of how it intends to use the extrinsic act evidence at trial*, i.e., during its case-in-chief, for impeachment, or for possible rebuttal.  *The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable*, either because of the lack of timeliness or completeness.  Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, *the offered evidence is inadmissible if the court decides that the notice requirement has not been met*.

FRE 404(b) advisory committee's note to 1991 amendment (emphases added).  In 2006, we adopted this amendment to Rule 404(b) by promulgation order.  *See* Promulgation Order No. 06-001 (Jan. 6, 2006).

**[38]**     Until 2006, in Guam the prosecution did not have to give pretrial notice under GRE 404(b). *See, e.g.*, *People v. Evaristo*, 1999 Guam 22 ¶ 8 ("This court is aware that Guam has not, to date, adopted such a notice provision. Accordingly, the People are not required to serve a defendant with notice of their intention to introduce evidence of prior bad acts."). The post-2006 version of the rule places specific notice requirements on the People.[8]

## C.  Requirements of GRE 404(b) Notice

**[39]**     If a defendant requests GRE 404(b) notice, *the prosecution* must disclose "the general nature of any [GRE 404(b)] evidence it intends to introduce at trial." GRE 404(b) (emphasis added); *see also Henderson v. Commonwealth*, 438 S.W.3d 335, 338 (Ky. 2014) (explaining that government—not defendant—is required to provide notice of its intent to present prior bad acts evidence at trial). The prosecution's duty to notify the defendant of GRE 404(b) evidence upon the defendant's request for such notice remains ongoing if this evidence is discovered later—even right before or during trial. *See* GRE 404(b); *United States v. Barnes*, 49 F.3d 1144, 1148–49 (6th Cir. 1995). Otherwise, this evidence is inadmissible.[9] GRE 404(b); FRE 404(b) advisory

---

[8] In 2020, the federal analogue to Rule 404(b) was amended to no longer require the defense to make a request for notice, instead requiring the prosecution to give notice as a matter of course. The new amendment imposes "additional notice requirements on the prosecution," such as requiring the prosecution to "identify the evidence that it intends to offer" and "articulate a non-propensity purpose . . . and the basis for concluding that the evidence is relevant in light of the purpose." FRE 404(b) advisory committee's note to 2020 amendments. Under the amended rule, "[t]he pretrial notice must be in writing—which . . . provides certainty and reduces arguments about whether notice was actually provided." *Id.* The drafters of FRE 404(b) specified the need for this amendment:

> The earlier requirement that the prosecution provide notice of only the "general nature" of the evidence was understood by some courts to permit the government to satisfy the notice obligation *without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose.* This amendment makes clear what notice is required.

*Id.* (emphasis added). Because the GRE has not been amended since its adoption in 2006, the 2020 amendment to FRE 404(b) is not reflected in GRE 404(b).

[9] *United States v. Carrillo*, 660 F.3d 914, 927–28 (5th Cir. 2011) (concluding notice of intent to prove that defendant previously distributed meth did not apprise him of intent to prove personal use; admitting the evidence was harmless error); *United States v. Barnes*, 49 F.3d 1144, 1148–49 (6th Cir. 1995) (explaining that government has continuing obligation, similar to that imposed by Federal Rule of Criminal Procedure 16(c) on discovery, "to disclose

committee's note to 1991 amendments; *see also Dixon v. State*, 712 N.E.2d 1086, 1090 (Ind. Ct. App. 1999) ("The notice provision is a prerequisite to the admissibility of the evidence of other wrongful acts. . . . Failure to comply with the requirements of the rule results in the evidence being inadmissible."). When the People fail to respond to the defense's request for GRE 404(b) evidence, we will treat the defendant's request for notice "as an objection to any unnoticed 404(b) evidence regardless of whether the defendant objects at trial." *See Olson v. State*, 2023 WY 11, ¶ 15, 523 P.3d 910, 914 (Wyo. 2023). Thus, when a defendant requests GRE 404(b) notice and the prosecution fails to respond, the defendant's GRE 404(b) arguments are considered preserved for appeal, including whether the lack of notice was reversible error. But where a defendant does not request GRE 404(b) notice, we will review for plain error.

## D. The People Failed to Provide Sablan with GRE 404(b) Notice

[40] Sablan argues that the Santos report "was not adequate notice of the prior incidents for several reasons. Most obviously, this is a report, not notice. Neither does it adequately describe the events the government intended to use nor notify the defendant of prior bad acts, which is crucial." *See* Appellant's Br. at 13 (Feb. 5, 2024). The People argue that "[n]otice of these acts was given via pre-trial discovery to Sablan." Appellee's Br. at 24.

[41] Mere discovery sharing is not GRE 404(b) notice. *See State v. Marquez*, 2023-NMSC-029, ¶¶ 33–34, 539 P.3d 303 (considering its Rule 404(b) which at the time included the 1991

---

additional evidence discovered after a previous request for information has been answered"); *United States v. Kern*, 12 F.3d 122, 124 (8th Cir. 1993) (concluding government gave adequate notice where, in response to order that bad acts be disclosed fourteen days before trial, government informed defendants in a hearing that it might use evidence of local robberies for which it did not yet have state reports; government provided reports one week before trial when it first received them); *United States v. Vega*, 188 F.3d 1150, 1153–55 (9th Cir. 1999) (reversing where, without notice, error to let prosecutor rebut claim that defendant traveled to Mexico for extramarital affair, not drug-related reasons; notice requirement covers evidence of other acts offered for rebuttal; that government did not know it would use the proof until defendant testified did not matter); *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (per curiam) (reversing where, without notice, it was error to admit convictions on issue of intent, which "went to the heart" of the defense), *cert. denied*, 543 U.S. 1177 (2005).

amendment); *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998) ("[P]roviding such evidence to the defense in discovery is not enough to satisfy the notice requirements of Rule 404(b) . . . ."). Our precedent does not endorse the People's contention that discovery sharing is sufficient notice under GRE 404(b).

[42]     The People point to *People v. Wesen*, 2022 Guam 18, where our analysis focused only on GRE 413. *See* 2022 Guam 18 ¶ 45. In *Wesen*, we reviewed for plain error the unobjected testimony of the victim to multiple instances of sexual contact. *Wesen* differs from this case, where we are reviewing the victim's objected testimony for harmless error. Because our analysis in *Wesen* focused on GRE 413 and not GRE 404(b), *Wesen* is inapplicable to our analysis of whether Sablan received GRE 404(b) notice.[10]

[43]     In *Wesen*, we explained:

> [W]e cannot help but feel sympathetic to the view expressed by Chief Justice Minton of the Kentucky Supreme Court that these jurisdictions may have been too quick to carve an exception to Rule 404(b) in these instances. *See Jackson v. Commonwealth*, No. 2019-SC-0597-MR, 2021 WL 2618168, at *7 (Ky. June 17, 2021) (Minton, C.J., concurring) (unpublished) ("While same victim, same act context might have some general tendency to be relevant to circumstantial issues[,] . . . the primary and predominant *use* of the evidence still controls and

---

[10] While the People could have defended against Sablan's objection at trial by citing GRE 413, they did not. "As a general principle, this court will not address an issue in the first instance on appeal." *People v. Taitano*, 2015 Guam 33 ¶ 36 (declining to consider whether GRE 413 was applicable). Not only did the parties and the trial court not consider the possible application of GRE 413 in this case, but there was no "searching inquiry" by the trial court to determine whether GRE 403 was satisfied under *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001). *See People v. Wesen*, 2022 Guam 18 ¶ 47 ("[E]ven when evidence qualifies under GRE 413, *Chinel* requires courts to conduct a GRE 403 analysis using [the] framework as provided in *United States v. LeMay*." (citing *People v. Chinel*, 2013 Guam 24 ¶ 39)); *Chinel*, 2013 Guam 24 ¶ 39 ("We hold that, going forward, *the trial courts* should apply the Ninth Circuit's test from *LeMay*. Courts should examine: (1) the similarity of the prior acts to the acts charged; (2) the closeness in time of the prior acts to the acts charged; (3) the frequency of the prior acts; (4) the presence or lack of intervening circumstances; and (5) the necessity of the evidence beyond the testimonies already offered at trial. . . . [W]e do not require that in every case the court must specifically address each factor. Rather, *we must be satisfied that the trial courts conducted a searching inquiry* citing any *LeMay* factors particularly relevant to the case, discussing any other factors that may be relevant, and considering both the amount of unfair prejudice and probative value in making determinations." (emphases added) (citing *LeMay*, 260 F.3d at 1028)). As "we are a court of review, not of first view," we decline to make an evidentiary characterization lacking a basis in the record below. *See Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005); *Taitano*, 2015 Guam 33 ¶ 36.

must still be nonpropensity, assuming the words of [Rule] 404(b) have any meaning and effect at all.").

*Id.* ¶ 43 (second and third alterations in original).  Here, the court found that "the People also did not pr[of]fer an admissible purpose of this evidence under Rule 404(b)."  Tr. at 8 (Day 3 Jury Trial).  As the primary purpose and use of evidence under Rule 404(b) must be non-propensity, the People did not meet the requirements of that rule here.

[44]     The People also argue that our holding in *People v. Evaristo*, 1999 Guam 22 ¶ 9, supports the contention that GRE 404(b) "notice is satisfied when a defendant has actual notice of potential testimony regarding prior bad acts and a defendant does not suffer prejudice when he indicates that he is prepared to deal with the evidence at trial."  Appellee's Br. at 28.  However, this court decided *Evaristo* in 1999, before the 1991 amendment to FRE 404(b) was adopted and added to GRE 404(b) by promulgation order in 2006.  *See* Promulgation Order No. 06-001 (Jan. 6, 2006).  Even still, in *Evaristo*, the defense counsel stated they were "prepared to argue" the GRE 404(b) evidence.  1999 Guam 22 ¶ 9.  That is unlike here, where defense counsel objected at trial, stating he was surprised and unprepared to meet the evidence.  *See* Tr. at 75 (Day 2 Jury Trial) ("I'm stupefied by this, Your Honor.").  Defense counsel noted in a post-trial motion that he "did anticipate that [the Santos report] might be offered pursuant to GRE 404(b)."  *See* RA, tab 84 at 2 (Reply Mem.).  But whether counsel anticipated it or not, his statements at trial do not reflect that he was "prepared to argue" the GRE 404(b) evidence in the same way that the counsel in *Evaristo* indicated.  1999 Guam 22 ¶ 9.  Given our rule now expressly requires notice before trial, and defense counsel's statement that he was "stupefied" by the proffer, *Evaristo* is unavailing to the People.  *See* Tr. at 75 (Day 2 Jury Trial).

[45]     Sablan argues that *United States v. Erickson*, 75 F.3d 470, 478 (9th Cir. 1996), is inapposite.  Appellant's Br. at 14.  In *Erickson*, the Ninth Circuit held that the government had

satisfied the notice requirement by disclosing statements from a prosecution witness in discovery and providing notice of the witness's potential testimony. 75 F.3d at 478. However, the Ninth Circuit qualified its holding, stating that even if notice was insufficient, the defendant was not prejudiced by any lack of notice because the defendant's attorneys stated that they were prepared to meet the testimony. *See id.* The Ninth Circuit's analysis of Rule 404(b) notice in *Erickson* was cursory, and the holding can be reasonably characterized as "lack of notice was harmless error." *See id.* The fact that a lack of Rule 404(b) notice could be harmless does not equate to the prosecution providing notice. Even so, the lack of notice was not harmless here, and we agree with Sablan that *Erickson* does not apply.

[46]     First, nothing suggests that the defendant in *Erickson* requested notice of 404(b) evidence or objected to its admission, but Sablan requested notice of GRE 404(b) evidence. *See* RA, tab 8 (Formal Req. 404(b) Evid.). Sablan also challenged the lack of pretrial notice in the government's appeal from the trial court's grant of the new trial, and now in his appeal from the judgment of conviction. *See* Appellant's Br. at 14 ("The instant case is very different [from *Erickson*] indeed because defense counsel strenuously objected to the use of GRE 404(b) evidence based on the lack of notice."). Actual notice of an allegation is not actual notice that the prosecution intends to introduce evidence of that allegation at trial. As the New Mexico Supreme Court explained:

> Although the district court found that Defendant had actual notice of the allegations of uncharged misconduct against J.K. through pretrial interviews, "[d]isclosing the information in discovery rather than in response to the specific rule misses the point of the rule, which is to inform the defendant of crimes the state intends to introduce and to allow the defendant time to respond by motion in limine or otherwise."

*Marquez*, 2023-NMSC-029, ¶ 33, 539 P.3d 303 (alteration in original) (quoting *State v. Acosta*, 2016-NMCA-003 ¶ 19, 363 P.3d 1240) (considering its Rule 404(b), which at the time included the 1991 amendment). Although actual notice of allegations is relevant in a harmless error analysis, we agree with the New Mexico Supreme Court that imputing Rule 404(b) notice from

discovery materials "misses the point" of Rule 404(b). *Id.* ¶¶ 33–34 ("Moreover, even if Defendant was on actual notice that there were other allegations of his prior, uncharged acts directed against J.K., the State's failure to provide notice pursuant to Rule 11-404(B)(2) would have suggested to Defendant that the State would not seek to introduce that evidence at trial." (citing *State v. Gomez*, 2003-NMSC-012, ¶ 7, 133 N.M. 763, 70 P.3d 753)).

[47] Placing someone on a witness list is not notice of intent to introduce GRE 404(b) evidence. *See, e.g.*, *Webb v. State*, 36 S.W.3d 164, 179 (Tex. Ct. App. 2000) (en banc) ("Listing a complainant in an unrelated case on a subpoena list does not supplant the State's obligation to provide reasonable notice under rule 404(b). At most, the subpoena list indicates the identities of witnesses whom the State intends to call to testify at trial. It does not indicate an intention by the State to use extraneous evidence in its case in chief, as required by the plain language of the rule."). We agree with the Texas Court of Appeals that:

> [A] defendant is entitled to rely on the State's obligation to respond to a timely request for notice under rule 404(b) as a prerequisite for its presentation of extraneous evidence. The reasonable expectations of a defendant who has properly requested notice and the basic framework of the rule are utterly frustrated when the State fails to timely disclose its intent to use evidence of extraneous offenses. Having requested notice of the State's intent to use extraneous offense evidence more than six months before trial, the appellant was entitled to assume that the State did not intend to use such evidence because the State had not provided the requisite notice by the eve of trial.

*Id.* The fact that Sablan was aware of the Santos report did not mean the prosecution had given responsive notice under GRE 404(b) that it intended to admit specific portions of the report's contents under GRE 404(b). *See* Appellant's Br. at 13 ("The defense never thought such a vague account of a prior incident would be used to prove anything."). Disclosing Santos as a prosecution witness did not provide sufficient GRE 404(b) notice that the prosecution intended to elicit other prior bad act testimony from M.T.G. based on the contents of the report.

[48]    The prosecution did not satisfy the "condition precedent" to the admissibility of GRE 404(b) evidence. *See* FRE 404(b) advisory committee's note to 1991 amendments. The People did not respond to Sablan's request for GRE 404(b) notice yet intended to introduce prior act evidence. *See People v. Pugh*, 2018 Guam 14 ¶ 28 ("The law highly disfavors unproven imputations of criminality." (citing GRE 404(b))); GRE 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."); GRE 104(a) (explaining the trial court is not bound by the rules of evidence when determining preliminary questions of admissibility). Because we conclude reversal is necessary based on the prosecution's failure to provide GRE 404(b) notice, we decline to address any other issues raised on appeal.

## E.  The People Failed to Meet Their Burden of Proving the Error Was Harmless

[49]    The People argue that "reversal is not required unless the *defendant* shows prejudice affecting the verdict." Appellee's Br. at 32 (citing *People v. Palacios*, 2023 Guam 5 ¶ 11; *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)). But this argument is wrong. We have emphasized that the People bear the burden of proving "it is more probable than not that the error did not materially affect the verdict." *Sharpe*, 2024 Guam 12 ¶ 58; *Pugh*, 2018 Guam 14 ¶¶ 26–27.

[50]    Our review for harmless error engages with several non-exhaustive factors. *See Pugh*, 2018 Guam 14 ¶ 26 n.4; *People v. Roten*, 2012 Guam 3 ¶ 41. "'Harmless error determinations are highly fact-specific,' and 'often involve a review of the entire trial record.'" *Pugh*, 2018 Guam 14 ¶ 26 n.4 (quoting *Inthavong v. Lamarque*, 420 F.3d 1055, 1060 (9th Cir. 2005)).

[51]    Our review of the record shows a pattern of prosecutorial conduct that undermines the procedural safeguards of GRE 404(b). Sablan requested notice of GRE 404(b) evidence, but the

People did not provide it. Then the prosecutor stated in his opening that he expected M.T.G. to testify to multiple incidents and emphasized other instances during L.G.'s direct examination (who testified before M.T.G.).

[52]    First, the People's opening statement reflects that they expected M.T.G. to testify to multiple incidents. Tr. at 23–24 (Day 1 Jury Trial) ("And it's also expected that she'll testify the Defendant -- this is not the only incident. Okay. There are other incidents."); *id.* at 22 (emphasizing that Sablan "has been touching her").

[53]    Second, on direct examination, the prosecutor refreshed L.G.'s recollection with her statement to police that she initially told police that M.T.G. told her that Sablan "touches" her as opposed to "touched." *Id.* at 70–72 ("Q: When [M.T.G.] first told you what happened did she say the word he touched me or he touches me?"). L.G. testified before M.T.G., and the prosecutor was laying a foundation to ask M.T.G. about multiple instances. *See id.* When defense counsel objected to the prosecutor's question asking M.T.G. how many times Sablan touched her, the prosecutor responded: "[L.G.] just testified. [L.G.] testified that this girl came to her and said he's touching me as touches, not touched, touches." Tr. at 65, 71 (Day 2 Jury Trial). The prosecutor later added that "the evidence that we already head [sic] from [L.G.] was that she told it was touches with an S, multiple touches when [sic] is why I asked the question that way. So the evidence the jury heard has already indicated this . . . ." *Id.* at 71.

[54]    During his opening statement, the prosecutor stated that M.T.G. would testify to other instances of touching. Tr. at 23–24 (Day 1 Jury Trial). Despite Sablan requesting GRE 404(b) notice, the prosecutor did not provide notice. The prosecutor elicited prior bad act testimony from M.T.G. Tr. at 54–63 (Day 2 Jury Trial). When the defense objected to the lack of notice, the prosecution admitted it was trying to elicit other act evidence—evidence that falls squarely within the scope of Rule 404(b). *See id.* at 63, 65, 71.

[55]     The trial court struck the inadmissible testimony after a four-day recess.  Tr. at 7-8 (Day 4 Jury Trial).  It found that the testimony was inadmissible and unfairly prejudicial.  RA, tab 87 at 14–15 (Dec. & Order).  We have explained: "The prosecution bears the burden of proving that evidence of a defendant's prior bad act is being admitted for a purpose other than to show mere propensity" and "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence."  *People v. Palisoc*, 2002 Guam 9 ¶ 18.  The People did not offer the evidence for a permitted purpose under Rule 404(b).  Even after the trial court's striking and the curative and jury instructions, we cannot conclude that the jury disregarded this unfairly prejudicial, inadmissible testimony.  This error was not harmless.

[56]     The People have not proven that "it is more probable than not that the error did not materially affect the verdict."  *See Sharpe*, 2024 Guam 12 ¶ 58.  The safeguards built into GRE 404(b) exist precisely to prevent the admission of evidence that would otherwise raise only the propensity inference, without adequate notice to the defendant and an opportunity for the trial court to assess its admissibility—and GRE 404(b) evidence is always subject to GRE 403.  The prosecutor's failure to meet these requirements requires reversal of Sablan's conviction.  *Cf. Mitchell*, 2020 WY 142, ¶ 28 ("Prosecutors should err on the side of providing pretrial notice, lest future failures to do so are appealed as prosecutorial misconduct.").

## V.  CONCLUSION

[57]     We **OVERRULE** *Sablan I*.  We conclude that M.T.G.'s testimony fell within the scope of GRE 404(b), and because the People did not provide GRE 404(b) notice upon Sablan's request, her testimony was inadmissible.  The People failed to meet their burden of showing that it is more probable than not that the presentation of unfairly prejudicial, inadmissible evidence (despite subsequent striking) did not materially affect the verdict.  We **REVERSE** the judgment of

conviction, **VACATE** the sentence, and **REMAND** for a new trial or other proceedings not inconsistent with this opinion.


| /s/ | /s/ |
|---|---|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice